For argument is Daniels-Hall v. National Education Association, counsel for the appellant. You may proceed. Thank you, Your Honor. Derek Lozier for Plaintiff-Appellant Jerry Daniels-Hall and David Hamblin. I would like to reserve five minutes for rebuttal. Just watch the clock, counsel. Your Honor, this case concerns the NEA Value Builder Plan. It's an ERISA plan that was established and maintained by the NEA and offered to NEA members, teachers, and other employees of the school districts throughout the country. Is there a dispute about whether it was established or maintained by the NEA? There certainly is, Your Honor. The position of the... And leaving aside the governmental plan issue and leaving aside this notion that the tax issues are somehow relevant, just on the actual facts of what the NEA does, is there a dispute about whether they established or maintained the plan? Well, Your Honor, the district court found, based on the complaint and on the materials that we submitted to the court, that there was sufficient evidence to show the establishment of a plan. It's certainly the position of the NEA and the other defendants that they did not establish a plan. And what the complaint alleges and what the materials show is that this is a very different circumstance than a typical 403B arrangement where an insurance company offers a product to a school district. Here, what we have is the union has gone out and created a nationwide elaborate program to offer this retirement savings vehicle to its members. And the conduct that we've alleged is that they set it up, they designed it, and they marketed it throughout the country. Now, the defendants want to argue that the NEA, in fact, only engaged in ministerial conduct. They want to take that safe harbor and use it for themselves. But in truth, taking the allegations as true, as we must at this stage of the case, there's no question, as the district court found, that the conduct we've alleged sufficiently establishes a plan. Now, what about ERISA? Is there a dispute with respect to whether there is, whatever this is, is it subject to ERISA? Well, I think there's certainly, the plaintiffs certainly don't view there to be a legitimate dispute about it. But the statute, which is our guide, we look to the statute first. As always is the case, the statute says that an employee organization can't establish or maintain a plan. And the Ninth Circuit has a test for whether you've established or maintained a plan. And the test is very clear. And there's a number of decisions that we... It's not so clear. What's so clear about it? Well, what's clear is that if you can identify who the beneficiaries are, where the funding comes from, what the program is, it's a plan. And the Ninth Circuit has indicated that that is not a high burden. That this is a test that's easy to meet. Not as to whether it's a plan, but as to who has established or maintained it. That's the question. There's a mixture in your briefs between two questions which are not the same question. I think it's certainly... A plan is a plan is a plan, depending on which statute you're talking about. Maybe. Well, there's a line of cases under ERISA that basically says if it walks like a duck and talks like a duck, it's a duck. Then it's a plan. But the question is who established or maintained the plan? That's the exact question at issue here. And the answer that the complaint provides and the allegations of the complaint are that it's the actions of the NEA. That the NEA undertook actions, which under any case that we can find in describing whether actions amount to establishing a plan, the NEA's actions establish a plan. Now the NEA wants to point at the school districts and say, look, if anybody established a plan here, it was the school districts. But the school district's conduct was purely ministerial. All they did, and the defendants haven't alleged in any way otherwise, is arrange for salary deferral. And under the safe harbor, and even without the safe harbor, just under the standard for establishing a plan, arranging for salary deferral... Didn't they physically purchase the plan? Didn't they have to transmit the... deducted the money, but they also... Are they in no contractual relationship with the plan? With the insurance company? Is who with no... I'm sorry? Is the school district in any contractual relationship with the insurance company? Well, that's an interesting question that's not clear from the record. It's certainly been the position of the parties that under the tax code, the school district technically has to purchase the plan. But in fact, in the record, all we have are contracts that individual teachers signed and reference and letters from the insurance company to the teachers congratulating them on purchasing the plan. But the issue on who purchases it, I think, is a very key issue. It's an important issue here because what the district court decided was that because the NEA can't, under the tax code, purchase these assets, the NEA can't establish a plan that offers the assets. And our response to that, again, is let's look at the statute. Let's use the statute as our guide. And under ERISA, a plan is established or maintained, can be established or maintained by an employee organization. That's the language of the statute. The statute does not qualify that by saying that an employee organization can't establish or maintain a plan, but only if it purchases the assets. That's just not in ERISA. That's something the district court found in the tax code and used that as the test for jurisdiction. Jurisdiction under ERISA is determined by Title I of ERISA. Title I says that if an employee organization establishes or maintains a plan, it's a plan. And we think it was inappropriate for the district court to reach out to the tax code and look at purchase. The tax code has no direct relevance. The relevance, it seems to me, is that it requires a contractual relationship. It requires, essentially, that the plan cannot actually exist and go forward without the employer's involvement of a certain kind, which involves purchasing the assets or the insurance. And the question is, if you don't do that, can you establish or maintain a plan? And where is the answer to that question? Can an employee organization, which endorses a plan and perhaps develops it and markets it, but cannot, in fact, make that plan available to any of its members or employees and does not? Let's think about the cannot. Because it cannot, it does not make a plan available to its members qua members or to employees without the intercession of the school system. I believe the answer to that question, again, Your Honor, is the statute. What does ERISA say? I mean, that's the best we can do as a law firm. Okay. Where is the answer to that? The answer is that under the statute, there's a definition of a plan. The definition of a plan is something that provides for retirement income. I'm sorry. That's not you're going back to what I said is not responsive. I understand The question is a plan. The question is who established or maintained it. Right. And the standard for that is you look at the conduct of who's alleged to be the sponsor. This isn't the first time there's been a dispute about whether someone's done enough to establish a plan. So your ultimate position has to be then, and I guess I'd like to know where, what support there is in the regulations of the statute. You may be right, but I'd like to know where it is, that an employee organization or association can establish or maintain a plan without being able, essentially, to deliver it to anybody. That's the plan. That's your argument. It could be right, but I'd like to know where you're getting it from. Well, again, what we're guided by is the statute. So if the district court came up with something to say this is not a plan, we have to look at the statute to decide if there's a basis for that. You know, it's not uncommon in any way for the sponsor of the plan not to purchase the assets of the plan. I mean, the way a 401K plan works, the sponsor doesn't purchase those assets. A trust does, typically with employee contributions. So the idea here that because the NEA can't purchase the asset... That's what I'm asking you. That's what I'm asking you. I need regulations or ERISA letters or some way to understand the circumstances in which that's the case. Well, the best we can do, Your Honor, is just take a step back and look at how ERISA works. And if the idea here that the district court had was, along with the question you're asking, what is it that says that the NEA can do this if they can't purchase the asset? There is nothing that says they can't. There's nothing in the statute that uses the word purchase. And this is really the crux of the problem, is that the district court looked to the tax code, took this word purchase, and said, that's the ERISA test. But that's not the ERISA test. ERISA just talks about establishing and maintaining a plan. It does not limit it to this. Let's switch gears for a minute. It's my understanding under your position, given the safe harbor provisions, that if the school district couldn't get the safe harbor, for example, because it was in some way putting money into the plan, or it was getting money for supporting the plan, or didn't meet one of the safe harbor provisions, then it would have established or maintained the plan, and then it would be a government plan, despite the involvement of the NEA. Is that right? Almost, Your Honor. The issue is, first, like any employer, the government gets the benefit of the safe harbor. They get to argue, as was the case in Silvera, that they didn't engage in conduct that established a plan, any plan. If they've blown the safe harbor, then the question is, is that plan that's providing that benefit for their employees a governmental plan? And it's not simply a foregone conclusion that it is. There's a test. ERISA is full of tests. You have to evaluate the conduct of the person that sponsored the plan and determine if there's a sufficient nexus to the government. So here, it may be that since there's no real dispute about school districts being governmental, that if they blew the safe harbor, then you'd look at the governmental plan exception. Okay. So it comes out really, so the answer ultimately is yes, on the facts of this case, right? That's my question. The answer whether if they blew the safe harbor, is it a school district, has the school district established a plan? Well, the answer here would be no, because the school district, you'd look at the conduct of the school district and decide if... No. If, with my hypothetical, if the school district did everything it did, but it blew some of the safe harbor. Okay. So if these school districts, because they're school districts, are governmental, and then the whole plan becomes governmental, right? Including NEA's involvement in it. Is that correct? Again, almost. If the school district blew the safe harbor and they did it in a way that showed that it had established a governmental plan, then it would be exempt as a governmental plan. Including the NEA's involvement? Yes. It would be a governmental plan. All right. So that's incredibly anomalous. It means that because the NEA either is or isn't involved in a governmental plan, depending upon not what they do, but on what the, exactly what the government detailed involvement in this scheme is. I don't believe that's anomalous, Your Honor. In the Silvera case, the Ninth Circuit case, it involved insurance companies and government and non-governmental entities. And that case was determined by whether it was a governmental plan. If it's a governmental plan, then it doesn't matter who they do the plan with. That, in fact, was the point of Silvera. If it's a governmental plan, then the insurance company's involved in a governmental plan. But we can't just assume it's a governmental plan because the people who participate in the plan are governmental employees. That is very, very clear. And so I don't think we can just assume here that because we have a plan for school districts, and school district employees participate, that that by itself shows it's a governmental plan. That would be directly contrary to Silvera itself. I think what's important from Silvera is in that case, the court evaluated whether this plan that was funded by the city was, in fact, a governmental plan. And the court said something very important for this case. And what the court said was, had the city merely presented its employees with a smorgasbord of benefit plans offered by different organizations, and without endorsing any one of those plans, permitted its employees to select and pay for the plan or plans of their choice, such a course of action would not have constituted the establishment or maintenance of a governmental plan. That's this case. That's exactly what happened here with school districts. They did nothing here but engage in ministerial conduct. The district court evaluated the conduct and agreed that all they did was ministerial conduct. They didn't establish a plan. So that brings us, Your Honor, to where we started, which is that, look, if the school district didn't establish the plan, did somebody else? And the answer is, well, we look at the conduct. But it's not a binary system. The answer could be nobody did it within the meaning of ERISA. The answer absolutely could be nobody established a plan. And so, again, we have the allegations of the complaint. We assume that they're true. We look at the material submitted with the test. It is sufficient involvement by the NEA. If we look at their marketing materials, for example, Your Honor, they say in the materials, this is the plan we've established for our members. They leave no doubt about that. And that particularly impressed the district court in evaluating this. So then that gets us to the final point and the point where we do disagree with the district court. And that is whether a tax code provision from SARISA, whether we look to the tax code and use its languages when deciding what ERISA requires. Well, under... Do you think that's what the district court was saying? Or was he instead saying something like what I was saying, which is, because it couldn't do it, we have to assume that it didn't do it. And what it didn't do makes it not a plan. Well, I think what the district court said, actually, was it's not that they can't do it. It's that they can't do it and have it be legally cognizable as a plan. You think he was saying something else. The district court was. The district court recognized that this conduct would establish a plan. And then it was stymied by the fact that the tax code uses this word purchase. But if we go back to the statute, you know, the statute, Your Honor, doesn't use the word purchase. It uses establish or maintain. Those are different words. The ERISA statute. The ERISA statute. And we're guided by the ERISA statute. Title I of ERISA is what we're talking about. Title II of ERISA and Title IV have to do with tax qualification. A plan can be not tax qualified, but still a plan. The law is very clear on that. But certainly these two parts of the statute do try to talk to each other. Absolutely, Your Honor. And in this case, they have talked to each other. We have a school district engaging in a ministerial function. They purchase the assets as required under the tax code. That allows this plan to be tax qualified. The purpose of the tax code is to provide a tax benefit so that retirement savings have a tax advantage. The purpose of ERISA is to protect those savings if they're in a plan. They work together. And here we have a plan where the school districts have engaged in the ministerial action necessary under the tax code. And the NEA, through this program, however they describe it, this is an unusual program. This is something strange that they've gone out and done. And under the standard under ERISA, what they've done is they've engaged in conduct that establishes a plan. Under the tax code, it's tax qualified. They have an argument based on the regulations, which essentially, I mean, it reads into an omission in the regulations. The fact that the Safe Harbor doesn't talk about employee organizations, that they're there because they can't be. Do you want to respond to that? And also, do we have any idea what the DOL thinks about these regulations or their regulations? Well, this is an interesting point. To answer your question, it is very odd to read into the omission of a party from a Safe Harbor that not only do they get the benefit of the Safe Harbor, they get immunity completely. I mean, generally when you're looking at a Safe Harbor and you're not in it, you don't get the benefit of it. And here the district court concluded from an omission that ergo they can't have it at all. They can't establish it at all. And that seems a strange conclusion to draw from an omission. Do we know why the DOL didn't include employee organizations in the Safe Harbor? No. We don't know why. Can we speculate it's because they didn't think they could establish the plan? You could speculate that. You could equally speculate that they didn't think that unions would have anything to do with these laws. What if we asked for an amicus brief from the DOL to tell us something about what they think this whole thing is about? Well, we did at the district court level. We asked the court to stay and go get the DOL's opinion and the court wasn't interested in doing that. I think what we do have from the DOL are the advisory opinions that they've issued. Anything that's like this? There's nothing that involves this exact circumstance, but there's plenty of instances where the DOL has applied to Safe Harbor when evaluating whether a plan is underfunded. I have a quick question. Including in the Feinstein case, a 1979 DOL advisory opinion that was issued in one of the cases cited by the district court. Is there anything out of the PGBC, the pension guarantee benefit corporation rules that show anything here? I don't think so. And the PBGC generally is involved in defined benefit plans or plans that are underfunded and so on. So I'm not sure we would find an answer there. We have plenty of DOL advisory guidance on the application of the Safe Harbor to governmental plans. Not with regard to a 403B plan to employ or associate? Admittedly, Your Honor, this is a very strange thing that unions come up with. But I think it's wrong to conclude from the fact that they came up with something clever and strange that it can't be protected by. Counselor, you're down to two minutes. I know you want to reserve. Thank you, Your Honor. I may do so. May it please the Court, I'm Julia Penny Clark. I am going to spend 15 minutes presenting the principal argument for all of the appellees. Mr. Christakis will then speak for five minutes on issues of particular concern to the insurance company defendants. Counselor, my advice to you is just watch the time because you have a ton of time. Absolutely, Your Honor. You have a total of 20 minutes to use any way you wish. The three points that I particularly want to make here are number one, the plaintiff's premise is absolutely unprecedented. There is nothing in all of the case law, the regulations, the statutes anywhere that held that an employee organization can establish or maintain a 403B plan or that even suggested that it could happen. Second, there are plenty of regulations here and they all point in the direction of the district court's ruling and that is that an employee organization because it cannot do the one thing that is essential to the establishment of a 403B program, i.e., purchase the annuity, cannot establish or maintain a 403B plan. And the third point is that the use of the tax code here is perfectly appropriate because it simply says that when a plan is structured to comply with the requirements of the tax code, you must take those into consideration in determining how that program works. To go back to my point before, it seems to me that the appropriate way to take a tax code into account is to say well, because they can't do this, they didn't do it and then ask whether what they didn't do is essential to establishing or maintaining a plan. But other than that, I don't particularly see the relevance of the tax code. There's something else I'm missing that the tax code is relevant to. No, Judge Berzon, I think you've just rephrased what I said in a slightly different way. Because they can't do it under the tax code, they didn't do it. So then the question really comes down for me to two things. One is whether purchase in general is generally essential to establishing or maintaining plans. And if not, whether it is for some reason essential in the 403B context. That's number one. And number two is how it interacts with the government plan issue. The answer to your first question is it's different under 403B. 403B is a particular section of the tax code that permits a kind of retirement benefit that's tax sheltered when the employer purchases an annuity contract or a custodial account on behalf of its employees. And that is unusual. I mean, it's different in that sense. These are very similar to 401K programs with which the court may be more familiar. The standard structure, like under a 401K program, is that the employer has a number of options that are available to those employees who wish to defer some of their compensation tax sheltered into these investments. And the employees get to choose the options. So there's an entire menu and if you take a look at supplemental excerpts of record 136 and 141 to 142, you'll see the menus that were available in the two school districts where the plaintiffs were employed. The age listing. You could go with Fidelity. You could go with Valic. Just a long list of familiar, vanguard familiar sounding institutions. And one of those is Security Benefit Life, which is the provider of the NEA Value Builder product. There's a shorter menu for South Kitsap, but there's still five annuity companies and four mutual fund companies on there. Now, Value Builder is just one of those options. The NEA did develop it in conjunction with the insurance companies and endorses it and markets it to its members, but it cannot be offered except through the framework of a public school district's 403B plan. Now, the Value Builder plan, there's a Value Builder annuity, and then at least as it appears on the website, there seems to be other things that are part of the Value Builder plan. Many insurance products, even homeowner's insurance and automobile insurance are offered through the NEA's buying power. But those have nothing to do with the 403B. That's correct. Now, Mr. Loeser quoted to you something from materials that he put in the record that he describes this as a plan, but I want you to focus excerpts of record page 370, the very same set of documents that he put into the record, describes what Value Builder is and how it fits into the structure that I've just been describing. It says, certain tax-exempt organizations and public school systems may establish a plan under which annuity contracts can be purchased for their employees. So that's describing the structure. These annuity contracts are often referred to as tax-sheltered annuities. So that's page 370. Similar quotes appear throughout the excerpts of record, the materials that the plaintiffs put in. Well, I mean, you do say in papers, you say things like the NEA established the NEA Value Builder plan to encourage members to save for retirement, but program, I mean. But that's the whole thing. It's not the selection of this particular annuity plan is a piece of it. And the question is which matters. Well, then I would point the Treasury regulations, which define Section 403B. These are in the addendum to the NEA brief. We've reproduced them there for the Court. And in particular, I mean, there are a variety of references. And if you notice throughout, they refer to the products like Value Builder. I mean, it's A18, A19 is where I am in the addendum to the NEA brief. They refer to the products like Value Builder as annuity contracts, vendors, 403B contracts. In particular, at the bottom of page A19 in the right-hand corner, the Treasury regulation has separate definitions for a Section 403B contract and a Section 403B plan. Now, the Section 403B contract is a contract that can be purchased for the participant or beneficiary. At the top of page A20, a Section 403B plan means the plan of the employer under which the Section 403B contracts for its employees are maintained. Now, the California Education Code uses the same terminology. It talks about the contracts, the products, the vendors that are all being offered through the 403B program or 403B plan that the employer provides. And if you look at, for example, the salary deferral agreement of Plaintiff Hamlin, which is in the supplemental excerpts of Record 134, it also uses that same terminology. It says that Mr. Hamlin is elected to have some of his salary deferred under the plan adopted by the high school district. And it talks about the district's tax-sheltered annuity plan. The only party in all of this picture that has any confusion at all about where's the plan are the plaintiffs in this case. Every reference is consistently discussing as consistent with the tax code and the Treasury regulations. But in general, an employee organization can establish or maintain a plan without purchasing the products that provide the benefits. I mean, is that generally so? And there's some case law that seems to recognize that. There are certain kinds of benefits that an employee organization can establish or maintain. In other words, if a member can go to them and buy it from them. But a union cannot establish a 401k plan on its own, for example, because, again, there's a salary deferral that has to be made. The employer has to be involved in that. The union cannot offer to its members as members. This is when it seems to me, at least when I'm having trouble with where the cutoffs are. If an employee organization creates a scheme and makes it available through the employer, but the employee can buy it directly and the only thing the employer is doing is deducting salary. At least outside the 403b context, that seems to be recognized as the association establishing and maintaining a plan. Because it's very clear from all of the regulatory materials that an employee cannot buy a 403b annuity directly. What it means is that purchasing the product, so to speak, is not an essential part of establishing or maintaining a plan. This is what I've been struggling with. In general, it isn't. And if in general it isn't, how does it become so with regard to the 403b context? Because the 403b annuity is different. And because, again, come back to this, the union can purchase a health insurance policy for its members. It can purchase a life insurance policy for its members. In the schemes that I'm positing, they don't. They find them and they market them and they endorse them and they act as the conduit, but they don't. That's my hypothetical. I don't know that that necessarily squares with the facts. In other words, I believe that it would be the case that in most such circumstances the union, in fact, will purchase the life insurance policy and will purchase the health insurance plan and then simply works with the employer to facilitate a deduction from employee salary, along with union dues, which would often be the case. But to come back to what is it about 403b? Is it just in our heads that unions can't establish and maintain a 403b plan here? If you look at the Department of Labor's safe harbor regulation, and we've reproduced the entire thing beginning at A49. Incidentally, we asked your opposing counsel about what DOL's position might be in this situation, and we referred to advisory opinions. Do you have a view on that? There are no advisory opinions addressing the 403b question. The safe harbor regulations, however, do. Would it make sense at this juncture to ask the DOL, i.e. to ask for an amicus brief from the DOL? We would certainly not oppose it. We do not believe it's necessary. If you look at the safe harbor regulations, the Department of Labor, you begin, they've got a number of different kinds of benefits that are included. If you start at page A50, they've carefully differentiated between those benefits that only an employer of the addendum to the NEA brief This is the entire, it's one regulation that is Department of Labor's promulgation on what is and isn't a plan. And where are we on that page? If you start in the left-hand column, sort of midway, you see there's payroll practices. So first there's a list of things where the employer is simply paying something out of its own normal revenues. There, the reference for the safe harbor is only to the employer. The employer will not be deemed to have established or maintained a plan if the employer doesn't do this or doesn't do that. There's a similar series in the right-hand column. You get to the bottom of the right-hand column, hiring halls. Well, that could be either an employee organization or an employer. They're both referenced. You come over to the next page, strike funds. Well, that's just unions. So, of course, it only refers to employee organizations. The bottom of the left-hand column on A51, certain group or group type insurance programs, and that's where health insurance and life insurance comes in. That refers to either an employer or an employee organization. You come over to the bottom of page A52, where they get to tax sheltered 403B program, and there it refers only to the employer. This is not a case where the Department of Labor has simply been silent about something. This is something where there is an intentional care of looking through what kind of program can an employee organization sponsor and where an employee organization can sponsor it, can establish or maintain it. It's part of the safe harbor. And I want to be very clear. NEA is not taking the position here that it's entitled to the safe harbor. We're simply saying that the safe harbor is beside the point. The union cannot establish or maintain the plan. Now, I need to... You're down to about four minutes, and I know you wanted to reserve some time for your co-counsel, but it's up to you. No, no, I'm just about to sit down and let him take over. Good morning. Nicholas Christakis representing the security benefit parties in this case, but also addressing points of concern to Nationwide. Before I do that, though, I do want to provide a more complete answer to the question of what the Department of Labor thinks about all this. You can find it very easily at the security benefit brief at pages 37 to 38, where you will see reference to the preamble to the Treasury Department's reissue of the 403B regulations in 2007, where it indicates that Treasury and IRS consulted with the Department of Labor, and I'm quoting now from the preamble, in connection with both the 2004 proposed regulations and these final regulations concerning the interaction... Excuse me, I'm just finding that now. Page 37. Page 37 of the security benefit brief. Of the security, there we go. That's correct. Consulted with the Department of Labor concerning the interaction between Title I of ERISA and Section 403B of the Internal Revenue Quote. That's a direct quote. In reporting on the outcome of that consultation, the preamble very clearly says that government plans and church plans are excluded from coverage under Title I of ERISA. It says, therefore, contracts purchased or provided under a program that is either a governmental plan under Section 332 of ERISA or a church plan are not generally covered under Title I. But there's nothing new in that, is there? No. But then it explains what the significance of the safe harbor is, and then goes on and talks about Section 403B is also available with respect to 501C3. Private employers, tax-exempt, can also set up a 403B annuity, and for those private employers, that's why the safe harbor was enacted, so that when that private employer establishes a 403B program, they can do so by complying with the safe harbor and be outside the scope of ERISA. You don't need it for government, because it's... Is your basic argument that this is a governmental plan is what you're arguing? That is certainly one of our arguments, and we think the district court got it wrong. You're intending to present in your next two minutes. Well, I just wanted to answer the question, really, of what the Department of Labor had to say, and no one had said it yet, so I wanted to draw your attention to that preamble. It's not all that loose, so keep coming. I understand. Your Honor, the issue I want to point out is the district court incorrectly held, we believe, that the value builder annuity is or can be an ERISA plan. It can't. It's an investment option that may be included within an ERISA plan. Take a look at the ERISA statute itself, where it draws a clear distinction in the definitional section between plan on the one hand and security on the other. You can look at the treasury regulations under Section 403B, which also clearly distinguishes between a Section 403B plan and a Section 403B contract, which is included within the scope of the Section 403B plan. Even the plaintiffs' appellants concede that there's no plan here arising from the annuity itself. Their position, this gets back to where this argument started, their position is that the NEA, through its conduct, meaning advertising, promoting, monitoring the performance of, and essentially giving advice to people when they call on the phone, that's what creates an ERISA plan here. Our position, all the appellees, I think, agree, if there is a plan here, it is the menu of the 403B options that are offered by each school district. And it goes a little bit beyond just purchasing the annuity. But you don't dispute that the safe harbor applies on that. All of you keep mixing up whether there's a plan and who established it. But the one thing we know is that, I gather, that under the safe harbor, the school district didn't establish or maintain it. If you want to apply the safe harbor to the school district, you can. You don't have to because it's excluded as a government plan. But certainly, you can apply it. My point is the school districts select the annuities pursuant to state law, the school districts offer them, the school districts then purchase them, and the school districts pursuant to the scheme of state law have the option of removing them from the menu. The NEA does none of that. These are the indicia of what plan sponsors do. So if there is a plan, it's a government plan sponsored by the government. Thank you, Counsel. Your time has expired. We'll hear from Mr. Lozier again. You have some reserve time. I don't have much time. To go back to sort of big picture points, under the statute, ERISA, Title I, does not require the plan to purchase the assets of the plan. And Your Honor made a point of unions engaging in this where they'll offer a benefit that's purchased by their members. Well, there is such a thing. It's a multi-employer union sponsored 401k plan. They exist. There's lots of them. Under those plans, the employees defer their salary via their employers, just like here, and it's an ERISA plan. What's the ERISA plan? I've always wondered about that. Is the ERISA plan the jointly trusteed multi-employer plan, or is it the agreement by an employer to pay into that, to pay money to that fund and to provide a benefit? I think our case law is completely confused on that. My understanding is it's the union multi-employer plan, of which both case law and there's tons of DOL advisory opinions that address circumstances like that, that talk about the multi-employer union plan as the plan. I just want to point out a few things in the record in what little time I have. At ER-410, in the package of materials that NEA has prepared that it used to market this plan to its teachers, who then, for better or for worse, we would say certainly for worse, signed up for, general information, first line sponsored by NEA. If you look at other materials, ER-454. But as I understand the argument being made by the insurance companies, what is sponsored by the NEA is a product that you can purchase through a plan provided by your employer. That's what's sponsored by the NEA. Well, if you look at ER-455, they have a line, the National Education Association of the United States, NEA, established the NEA Value Builder Program to encourage its members to save for retirement. So I think the reason why the district court rejected their argument that this conduct doesn't amount to establishing a plan under the Ninth Circuit test is that the NEA itself has described its actions as establishing a plan. So we really have to depart from the basic rule, we have to assume these facts as true, to get where they want to be today, which is this is not a plan. One point on this preamble... This will have to be your last point, Mr. Counsel. On the preamble to the DOL regulations, the 403B regulations, as to the regulations themselves even, they don't answer the question, which is, is this a governmental plan? They just make the point that we don't dispute, which is that governmental plans are not subject to Title I of ERISA. This is not a governmental plan. If we look at the conduct here of the NEA, it's the NEA's plan, the NEA has called it its plan, and operated as its plan. Therefore, under the Ninth Circuit test we suggest this is an ERISA plan. Thank you, Counsel. The case just argued will be submitted for decision, and the Court will adjourn.
judges: Hall, O'scannlain, Berzon